**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

ORLANDO GONZÁLEZ TOMASINI,

Plaintiff,

v.                                                 CIVIL NO.: 17-1552 (MEL)

UNITED STATES POSTAL SERVICE, et al.,

Defendants.

**OPINION & ORDER**

## I.   PROCEDURAL BACKGROUND

Mr. Orlando González Tomasini ("Plaintiff") filed an amended complaint against United States Postal Service and its Postmaster General in his official capacity ("Defendant" or "USPS"), on December 17, 2018. ECF No. 28.[1] In his complaint, Plaintiff alleges violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Rehabilitation Act, 29 U.S.C. § 791 et seq., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.[2] Plaintiff alleges that USPS, his employer at the time of the events in controversy, subjected him to age and disability discrimination, interfered with his substantive rights under the FMLA, and retaliated against the Plaintiff for protected activity under each of the above Acts.

Defendant filed a motion for summary judgment which was granted in part and denied in part on March 24, 2022. ECF No. 159. Summary judgment was denied with regards to Plaintiff's

---

[1] At the time the suit was filed, the Postmaster General of the United States was Megan J. Brennan, but Louis Dejoy has since assumed the post. Under Federal Rule of Civil Procedure 25(d), when a suit is commenced against a public officer in their official capacity who then ceases to hold office and is replaced, then "[t]he officer's successor is automatically substituted as a party."

[2] Plaintiff's claims for violations of the Federal Tort Claims Act ("FTCA") and Puerto Rico law claims under 31 L.P.R.A. §§ 5141, 5142 were dismissed by the court when ruling upon Defendant's original motion to dismiss filed on September 4, 2019. ECF No. 46.

claims under the Rehabilitation Act for disability discrimination, hostile work environment, and alleged instances of Defendant failing to accommodate Plaintiff after February 20, 2015. ECF No. 159 at 73. Defendant was also denied summary judgment with regard to Plaintiff's retaliation claims under ADEA, the Rehabilitation Act, and FMLA for Defendant allegedly creating a hostile work environment, refusing to accommodate Plaintiff, and for levying unjustified discipline on Plaintiff. ECF No. 159 at 73.

However, Defendant's motion for summary judgment was granted on Plaintiff's age discrimination and age-based hostile work environment claims under ADEA, and those claims were dismissed accordingly. ECF No. 159 at 73. Likewise, Defendant was granted summary judgment on all of Plaintiff's claims under any statute based on the alleged fabrication of criminal charges against Plaintiff by Defendant. ECF No. 159 at 73. Finally, summary judgment was also granted dismissing any of Plaintiff's claims for failure to accommodate which were based on Defendant's actions which occurred before February 20, 2015. ECF No. 159 at 73.

Pending before the court are two motions to dismiss filed over two months after the court's opinion and order on Defendant's motion for summary judgment and less than two months before trial. ECF Nos. 180, 183. The motions were also filed approximately eight months after the deadline to file dispositive motions expired on October 4, 2021. ECF No. 149 at 1. In those two motions, Defendant now moves to dismiss Plaintiff's Rehabilitation Act claims in their entirety, arguing that the court lacks subject matter jurisdiction over those causes of action under Federal Rule of Civil Procedure 12(b)(1) due to the exclusive jurisdiction of the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq. ECF Nos. 180, 183. Plaintiff has filed responses in opposition to each of Defendant's motions to dismiss. ECF Nos. 192, 193.

## II.   FACTUAL BACKGROUND[3]

At all times during the events at issue in this case, Plaintiff was an employee of the USPS at the Bayamón Branch Post Office in Puerto Rico. ECF No. 152 at 1, ¶ 2; see ECF No. 157 at 2, ¶ 2. Plaintiff's claims largely center on treatment to which he alleges he was subject by his direct supervisor Juan Santos ("Santos") and Managing Supervisor Richard Lugo ("Lugo").

### A.  Plaintiff's Claim for Failure to Accommodate Under the Rehabilitation Act

With regard to Plaintiff's failure to accommodate claim under the Rehabilitation Act, the court determined at summary judgment that Plaintiff had not exhausted administrative remedies under the "45-day rule" except with regard to any alleged denial of reasonable accommodations which occurred after February 20, 2015.[4] ECF No. 159 at 33. Plaintiff engaged in activity which he claims to be a "request for reasonable accommodation" after February 20, 2015 when Plaintiff submitted a CA-17 "Duty Status Report" on February 27, 2015. ECF Nos. 159 at 34; 152-1 at 109–10; 152- 11 at 38–39, ¶ 107; 157 at 17, ¶ 59. Plaintiff filed that CA-17 duty status report with the Office of Workers' Compensation Programs ("OWCP") at the Department of Labor ("DOL") following an accident on January 8, 2015 wherein Plaintiff alleged he fell and injured his knee while on his route. ECF Nos. 157 at 43, ¶ 47; 157-8 at 71, ¶¶ 8–10; 75, ¶¶ 4–7. After his

---

[3] At all times in this opinion and order any citation to the summary judgment record is with reference to resolving any jurisdictional question under Defendant's motions to dismiss. See González v. United States, 284 F.3d 281, 288 (1st Cir. 2002). For those arguments that are not jurisdictional in nature, the court only relies on the allegations of the complaint and does not consider the summary judgment record so as to convert either of Defendant's motions into one for summary judgment.

[4] However, the court did not apply the 45-day rule to Plaintiff's discriminatory hostile working environment and retaliation claims under the Rehabilitation Act for acts before February 20, 2015 which allegedly created a "hostile working environment" and which constituted disability discrimination or retaliation under the Rehabilitation Act. ECF No. 159 at 33, n. 22. "So long as one instance of harassment falls within the statutory limitations period . . . the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Nieves Borges v. El Conquistador Partnership, L.P., S.E., 936 F.3d 1, 8 (1st Cir. 2019) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002); Franchina v. City of Providence, 881 F.3d 32, 47 (1st Cir. 2018) (internal quotations omitted)). Accordingly, Plaintiff's claims for discriminatory hostile working environment and hostile work environment retaliation were not barred by the 45-day rule. Furthermore, all instances of alleged retaliation for unjustified discipline under the Rehabilitation Act occurred after February 20, 2015, and so are not subject to the 45-day rule.

3

January 8, 2015 accident, Plaintiff elected to be placed on leave of absence for 45 days. ECF Nos. 152 at 7, ¶ 58; 157 at 17, ¶ 58; 157-8 at 79, ¶¶ 4–17. In support of his motion in opposition to Defendant's first motion to dismiss (ECF No. 180), Plaintiff also introduced evidence showing that in a written document marked April 20, 2015, Plaintiff made a written request for "[a] proper limited duty agreement or a fair job accommodation." ECF Nos. 192 at 7; 192-2.

The CA-17 duty status report which Plaintiff submitted on February 27, 2015 following his leave of absence contains a "Side A" to be completed by Plaintiff's supervisor, and a "Side B" which was to be completed by Plaintiff's physician. ECF No. 183-1. Plaintiff's supervisor on Side A indicated that "the Usual Work Requirements" for Plaintiff required that he be able to lift and carry 10 pounds continuously and 70 pounds intermittently for eight (8) hours per day. ECF No. 183-1. However, Plaintiff's physician communicated on Side B that Plaintiff was only capable of lifting 15 pounds continuously and 20 pounds intermittently for two (2) hours per day. ECF No. 183-1. Plaintiff alleges that Santos and Lugo refused to "accommodate" Plaintiff's "restrictions for his medical conditions by refusing to take away the heavy packages in his route" during 2015. ECF No. 157 at 32, ¶ 9. On this basis, the court held that evidence showing that Defendant failed to take heavy packages off Plaintiff's route was sufficient for Plaintiff's failure to accommodate claim to survive summary judgment. ECF No. 159 at 35.

### B. Plaintiff's Claim for Discriminatory Hostile Working Environment

At summary judgment the court also determined that Plaintiff had produced enough evidence to survive summary judgment on his disability-based hostile working environment claims. Beginning on August 19, 2014, after Plaintiff requested auxiliary assistance and explained that he had a previous work arrangement with Lugo, Santos told the Plaintiff that Lugo could "stick" the arrangement "up his ass." ECF No. 157-22 at 101, ¶¶ 2–16. On December 3,

4

2014, Lugo also wrote in a document sent to the Department of Labor that Plaintiff was a "repeated offender." ECF No. 152-20 at 1; ECF No. 152-5 at 151, ¶¶ 1–14. On March 12, 2015, Lugo told Plaintiff that he was "just a cheater like Robert Rosado (retired carrier) who had an accident on every route he was on." ECF No. 157 at 49, ¶ 75; ECF No. 157-17 at 1. After Plaintiff contacted the EEOC, Santos and Lugo called Plaintiff a "repeat offender," a "hustler," and revealed they had a nickname for Plaintiff: "Trucoman56." ECF No. 157 at 32, ¶ 10; ECF No. 157-2 at 54, ¶¶ 13–22. Santos also made statements which implied to Plaintiff that Plaintiff was not "fit for duty" and that when he was "ready to work for real to bid back because at this post office you have to come to work." ECF No. 157 at 48, ¶ 71; ECF No. 157-19; ECF No. 157-23 at 21, ¶¶ 2–6; 22, ¶¶ 2–10. Plaintiff also produced evidence that after January 2015 he was subject to a "special procedure" whereby all disciplinary and injury matters for Plaintiff had to go through Santos. ECF No. 158 at 24; ECF No. 157 at 42, ¶ 46; 47, ¶ 68; ECF No. 157-8 at 68, ¶¶ 22–24; 134, ¶¶ 1–19. In their totality, the court held that these remarks and ill-treatment could establish for a reasonable fact finder that Plaintiff was subjected to a discriminatory hostile working environment in violation of the Rehabilitation Act. ECF No. 159 at 40.

### C.  Plaintiff's Claims for Retaliation

The court also held that Plaintiff succeeded in producing enough evidence to survive summary judgment on his retaliation claims for the above acts which could have reasonably created a hostile working environment and for refusing to accommodate Plaintiff by not taking the heavy packages off his route. ECF No. 159 at 49, 53–56. Plaintiff also produced evidence sufficient to survive summary judgment regarding certain acts of unjustified discipline which Plaintiff alleges levied in retaliation of his protected activity. ECF No. 159 at 51. As such, the court held that Plaintiff's claims for retaliation under the ADEA, Rehabilitation Act, and FMLA

for creating a hostile work environment, refusing to accommodate Plaintiff, and for levying unjustified discipline survived summary judgment. ECF No. 159 at 73.

### III.   LEGAL STANDARD

Pursuant to Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Droz Serrano v. Caribbean Records Inc., 270 F. Supp. 2d 217, 217 (D.P.R. 2003) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). To determine if the burden has been met, the court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). The court, however, is not bound by the allegations in the pleadings and is permitted to consider materials outside the pleadings to determine jurisdiction on a Rule 12(b)(1) motion. See González v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

Plaintiff contends that Defendant's argument concerning the jurisdiction of FECA as it relates to the Rehabilitation Act is not a jurisdictional motion, but rather, an improper motion for reconsideration. ECF No. 192 at 6–7. However, a motion to dismiss for lack of subject matter jurisdiction may be raised "at any time" and the court "must dismiss the action" if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); United States v. González, 311 F.3d 440, 441 (1st Cir. 2002) ("[A] court is expected to raise the subject-matter jurisdiction objection on its own motion at any stage and even if no party objects."). As further discussed in detail below, the interplay of the parameters of jurisdiction under FECA and the Rehabilitation Act are far from clear, and Defendant's arguments warrant an examination by the court of its

own jurisdiction over Plaintiff's failure to accommodate claim under the Rehabilitation Act and how it relates to the exclusive jurisdiction of FECA.

IV. **DEFENDANT'S FIRST MOTION TO DISMISS PLAINTIFF'S REHABILITATION ACT FAILURE TO ACCOMMODATE CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION (ECF No. 180)**

In Defendant's first motion to dismiss, Defendant moves to dismiss with prejudice only Plaintiff's failure to accommodate claim under the Rehabilitation Act pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 180 at 1. Noting that the court had dismissed all Plaintiff's claims for failure to accommodate which occurred before February 20, 2015, Defendant now argues that the court lacks subject matter jurisdiction over Plaintiff's failure to accommodate claim under the Rehabilitation Act because as a matter of law, Plaintiff's filing of a CA-17 on February 27, 2017 shows that Plaintiff was "no longer capable of performing the essential functions" of his job. ECF No. 180 at 3–5. Therefore, a request for limited duties removes Plaintiff's failure to accommodate claim from the realm of the Rehabilitation Act and places it into the sole jurisdiction of FECA. ECF No. 180 at 3–5.

A. **The Parties' Prior Representations**

It is worthy of mention that no party raised this jurisdictional issue before summary judgment or at the summary judgment stage. In fact, at the summary judgment stage, the court called attention to the parties' inconsistent and puzzling use of "reasonable accommodation," writing "it is unclear how the parties define 'accommodation.' Defendant contends that 'Plaintiff did not request reasonable accommodation after his January 8, 2015 knee injury.'" ECF No. 159 at 10, n. 10. Plaintiff replied that "it was no[t] necessary at that time to request a reasonable accommodation 'because the doctor is putting it right here, that I should continue on limited

duties.'" ECF No. 157 at 24, ¶ 77; ECF No. 157-1 at 217, ¶¶ 18-24. ECF No. 159 at 10, n. 10.[5]

Moreover, in contrast to the argument which Defendant now brings on jurisdictional grounds,

Defendant even expressed in its motion for summary judgment's proposed statement of

undisputed material facts that "[Plaintiff] could perform the essential functions of the job, with or

without reasonable accommodation[.]" ECF No. 153 at 14. Needless to say, neither party clearly

delineated as a matter of law whether Plaintiff's February 27, 2015 CA-17 filing was reasonable

accommodation invoking the Rehabilitation Act, but because neither party challenged the issue,

the court, taking all reasonable inferences in Plaintiff's favor, assumed that it was for purposes of

summary judgment. ECF No. 159 at 7, n. 8 ("Because of the parties' inconsistent use of the term

"accommodation" with regard to Plaintiff's limited duties, for the purposes of deciding the

summary judgment motion and taking all inferences in favor of the Plaintiff, the court will

consider filing a CA-17 for limited duty restrictions as a request for an "accommodation.").

### B.  Plaintiff's Judicial Admissions Argument

Now, Defendant comes with a different theory that it did not raise in its motion for

summary judgment, asserting that Plaintiff's February 27, 2015 CA-17 OWCP request precludes

this court's jurisdiction under FECA. ECF No. 180 at 3. Plaintiff correctly points out in his

opposition to Defendant's first and second motions to dismiss that Defendant wrote in its motion

for summary judgment that "[Plaintiff] could perform the essential functions of the job, with or

without reasonable accommodation[.]" ECF No. 153 at 14; ECF No. 193 at 7, n. 1.[6] Plaintiff

argues that these statements functioned as "judicial admissions" that bind Defendant at all stages

---

[5] Plaintiff also agreed to assertions which are contradictory to his current arguments, agreeing for example, that "Plaintiff did not ask for a reasonable accommodation after the accident that he reported to USPS and OWCP in 2013." ECF No. 152 at 5, ¶ 41; ECF No. 157 at 12, ¶ 41; ECF No. 157-28 at 4.
[6] Plaintiff also draws attention to Defendant's assertion that "Plaintiff provided the CA-17 for the accident of 2013 to Manager Lugo, before Santos became his supervisor. Manager Lugo abided by Plaintiff's limited duty on the CA-17" (ECF No. 152 at 5, ¶ 39) and calls it a "judicial admission." ECF No. 192 at 10.

of the litigation and forecloses Defendant's jurisdictional arguments in its motions to dismiss.[7]
ECF Nos. 192 at 10; ECF No. 193 at 7, n. 1. Plaintiff is incorrect.

"Judicial admissions are formal concessions in the *pleadings*, or *stipulations* by a party or
its counsel, that are binding upon the party making them. They may not be controverted at trial
or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact
from contention." Keller v. United States, 58 F.3d 1194, n. 8 (7th Cir. 1995) (emphasis added).
Additionally, a judicial admission binds the party which made that admission, "throughout the
course of the proceeding." Schott Motorcycle Supply Inc. v. Am. Honda Motor Co., 976 F.2d 58,
61 (1st Cir. 1992) (citing Bellefonte Re Insurance Co. v. Argonaut Insurance Co., 757 F.2d 523,
528 (2d Cir.1985). Black's Law Dictionary defines "pleading" as "[a] formal document in which
a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims,
denials, or defenses. [] In federal civil procedure, the main pleadings are the plaintiff's complaint
and the defendant's answer." PLEADING, Black's Law Dictionary (11th ed. 2019). "Stipulation"
is defined by Black's Law Dictionary as "[a] voluntary agreement between opposing parties
concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys
representing adverse parties to the proceeding." STIPULATION, Black's Law Dictionary (11th
ed. 2019). Additionally, in contrast to formal judicial admissions made in pleadings or
stipulations, statements such as those made in "support of a motion for summary judgment" are
ordinary party admissions which "are admissible but can be rebutted by other evidence[.]"Atlas
Glass & Mirror, Inc. v. Tri-North Builders, Inc., 997 F.3d 367, 373 (1st Cir. 2021) (citing United
States v. Belculfine, 527 F.2d 941, 944 (1st Cir. 1975)); Behlau v. Tiger Tiger Productions, LLC,
2021 WL 981672 at *4 (D.N.H. Mar. 16, 2021).

---

[7] This argument is also the basis of Plaintiff's fourth motion *in limine*. ECF No. 197. For the same reasons as here,
Plaintiff's argument is without merit.

There are two major problems with Plaintiff's argument. First, the statements which he argues constitute judicial admissions were not formal statements made either in the pleadings or as stipulations. A motion for summary judgment meets neither definition for a pleading because it is neither a complaint nor an answer. Nor were the statements made as stipulations. Indeed, the statements of fact offered as part of Defendant's motion for summary judgment are "*proposed* statement of material facts" and by filing that proposed statement the parties do not come to a voluntary agreement which transforms those statements of fact into a list of stipulations for trial. Statements made at summary judgment are therefore not a "pleading" nor a "stipulation" so as to establish a binding judicial admission. Rather, as a matter of law, statements made in support of a motion in summary judgment, such as the ones Defendant made, are ordinary party admissions that are not "conclusive on the party making them." Atlas Glass & Mirror, Inc., 997 F.3d at 373 ("Unlike ordinary admissions, which are admissible but can be rebutted by other evidence, judicial admissions are conclusive on the party making them.").

Secondly, even if Defendant's untimely and inconsistent representations at summary judgment and in its motions to dismiss functioned as some binding admission of fact, if any such previous admissions are incorrect as a matter of law they cannot be relied upon or constitute a waiver so as to establish subject-matter jurisdiction under the Rehabilitation Act, as discussed below. See Alejandro Ortiz v. Puerto Rico Elec. Power Auth., 872 F. Supp. 2d 133, 145 (D.P.R. 2012) ("Because subject-matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived."); González, 311 F.3d at 441 ("[A] court is expected to raise the subject-matter jurisdiction objection on its own motion at any stage and even if no party objects.").

### C.  FECA Jurisdiction and the Rehabilitation Act

Defendant argues that because the alleged denial of reasonable accommodations occurred after February 20, 2015, Plaintiff's only action which could be construed as a "request for reasonable accommodation" occurred when Plaintiff submitted a CA-17 "Duty Status Report" for limited duties on February 27, 2015 after which Plaintiff alleges heavy packages were not taken off his route. ECF No. 180 at 12. Defendant argues that a limited duty position is only available to claimants to the OWCP under the jurisdiction of FECA, and that the Rehabilitation Act does not require the employer to create a permanent limited duty position as a "reasonable accommodation." ECF No. 180 at 9–10. Therefore, Defendant asserts that if Plaintiff believed his limited duties were violated by heavy packages not being taken off his route, he did not suffer a denial of a reasonable accommodation under the Rehabilitation Act; but rather, his only recourse was to appeal to the OWCP under FECA, and not under the Rehabilitation Act. ECF No. 180 at 11–13. Plaintiff responds that his requests for limited duties were requests for reasonable accommodation and that his requests were not tantamount to requesting a permanent limited duty position. ECF No. 192 at 4–5, 10–11. Plaintiff further asserts that he is not contesting or asking for review of any decision made by the OWCP, so the jurisdiction of FECA is irrelevant. ECF No. 192 at 10. Finally, Plaintiff argues that he made more than one request for a "fair job accommodation" after February 20, 2015. ECF Nos. 192 at 7; 192-2.

### 1.  The Jurisdictional Bar Under FECA

FECA functions as the exclusive remedy for workplace injuries sustained by federal employees. 5 U.S.C.A. § 8116(c); Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193–94 (1983); Gill v. United States, 471 F.3d 204, 206 (1st Cir. 2006); Meester v. Runyon, 149 F.3d 855, 856 (8th Cir. 1998). "FECA contains an unambiguous and comprehensive provision barring

any judicial review of the Secretary of Labor's determination of FECA coverage." Gill, 471 F.3d

at 206 (citing Sw. Marine, Inc. v. Gizoni, 502 U.S. 81, 90 (1991)) (internal quotations omitted).

In Lockheed Aircraft Corp. the Supreme Court explained that FECA's exclusive liability

provision was

> [D]esigned to protect the Government from suits under statutes, such as the
> Federal Tort Claims Act, that had been enacted to waive the Government's
> sovereign immunity. In enacting this provision, Congress adopted the principal
> compromise—the "quid pro quo"—commonly found in workers' compensation
> legislation: employees are guaranteed the right to receive immediate, fixed
> benefits, regardless of fault and without need for litigation, but in return they lose
> the right to sue the Government.

460 U.S. at 193–94 (1983). Accordingly, FECA specifies that "[t]he Secretary of Labor shall

administer, and decide all questions arising under, [FECA]." 5 U.S.C.A. § 8145. Therefore, when

a federal employee has an injury falling within the scope of FECA, FECA is the employee's sole

and exclusive remedy. Montana v. Donahoe, 2011 WL 3862213, at *4 (W.D. Tex. 2011).

Because both FECA and the Rehabilitation Act "are both employment related" and there

exists some "overlap" between the statutes, courts have struggled to define when FECA's

jurisdiction precludes federal jurisdiction under the Rehabilitation Act when a plaintiff's alleged

disability is tied to a workplace injury. Naughton v. Gilbane, Inc., 46 F. Supp. 3d 152, 155

(D.R.I. 2014); see also Luellen, 54 F. Supp. 2d at 779; Reidy v. Runyon, 971 F. Supp. 760, 770

(E.D.N.Y. 1997) ("In any event, the courts disagree as to whether the reasoning set forth [for

FECA and causes of action brought under Title VII] applies to cases brought under the

Rehabilitation Act."). The limits of jurisdiction in such cases are admittedly obscure, and courts

have come to differing conclusions about whether and to what extent the filing of an OWCP

claim under FECA works to preclude the federal courts from exercising jurisdiction on certain

Rehabilitation Act claims. Compare Montana, 2011 WL 3862213 with Meester, 149 F.3d at 855.

Nevertheless, FECA and the Rehabilitation Act are ultimately different causes of action providing different remedies. Meester, 149 F.3d at 858–59. "The Rehabilitation Act is a separate, independent cause of action [from FECA] whose purpose is to redress disability employment discrimination and to provide damages for back pay, compensatory damages, attorney's fees, and injunctive relief by way of accommodation or reinstatement." See Id. at 858–59. In contrast, FECA covers federal employees injured by "accident, [or] a disease proximately caused by the employment[.]" 5 U.S.C.A. § 8101(5). In such cases, "[t]he United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty[.]" 5 U.S.C. § 8102(a).

However, FECA's remedies are not limited to compensation. In addition to compensation, FECA "require[s] that the Postal Service make special efforts to employ those injured employees, who will otherwise be compensated for doing nothing." Franklin v. Potter, 600 F. Supp. 2d 38, 57 n. 7 (D.D.C. 2009) (internal citations omitted). For an employee to submit a claim under FECA, the implementing regulations for FECA require that the employee submit a Form CA-1 to OWCP and "forward the notice to the employer." 20 C.F.R. § 10.100. Thereafter, the OWCP decides whether to accept or reject the employee's workers compensation claim. Sharpe v. Henderson, 2001 WL 34039485, at *12 (D. Or. Oct. 19, 2021). "If the OWCP rejects the worker's compensation claim of an injured employee, then the USPS is no longer bound by the obligations of the Department of Labor, but must comply only with the Rehabilitation Act." Sharpe, 2001 WL 34039485, at *12. If, however, "the OWCP accepts the claim of an injured employee with permanent partial restrictions, then the USPS must find work for that employee consistent with that employee's restrictions." Id. (citing 20 CFR § 10.507(b)).

"The USPS meets this obligation through a special classification of modified jobs, Labor

Distribution Code ("LDC") 69, which are often referred to as permanent *limited* duty. These jobs

may consist of tasks that are subfunctions, and not essential functions, of an existing position,

and are specifically tailored for the injured employee[.]" Id. In other words, "limited duty

assignments are meant to be permanent work assignments that are given to employees who are

no longer capable of performing the essential functions of their jobs, and whose workers'

compensation claims have been accepted by OWCP." Sizemore v. Potter, 2008 WL11514999 at

*1 (N.D. Ill. Apr. 18, 2008). When an employing agency like the USPS offers the partially

disabled employee a position, the employer must forward a copy of the offer to the OWCP for

evaluation. New v. Department of Veterans Affairs, 142 F.3d 1259, 1262 (Fed. Cir. 1998). The

OWCP "has the ultimate authority to determine" if an employee's limited duties exceed the

employee's physical limitations, "and the employing agency is obligated to comply with the

decision of the OWCP." Montana, 2011 WL 3862213, at *2. An unfavorable determination by

an OWCP hearing examiner can be appealed to the Employee Compensation Appeals Board

("ECAB"). Stone v. Chao, 284 F. Supp. 2d, 241, 244 (D. Mass. 2003). Finally, "where the

employer has no specific alternative positions available for an employee who can perform

restricted or limited duties, the employer should advise the employee of any accommodations the

agency can make to accommodate the employee's limitations due to the injury." 20 C.F.R. §

10.505.

   After the employee returns to work, "[t]he employer may monitor the employee's medical

progress and duty status by obtaining periodic medical reports" using a Form CA-17 "Duty

Status Report." 20 C.F.R. § 10.506; 20 C.F.R. § 10.331 ("The employer should use Form CA–17

to obtain interim reports concerning the duty status of an employee with a disabling injury."); 20

14

C.F.R. § 10.7. The Duty Status Report Form CA-17 is completed by a member of management and the employee's physician. <u>Montana</u>, 2011 WL 3862213, at *2. The left column of the form, "Side-A" is completed by management and lists the requirements of "the essential functions of a city letter carrier." <u>Id</u>. The right column, "Side-B" is completed by the employee's physician and lists the employee's physical limitations "which could impact the employee's ability to perform his duties." <u>Id</u>.

### 2. Compensation Decisions

Some courts have interpreted FECA's jurisdictional provision to only bar suits under the Rehabilitation Act which seek to collaterally attack compensation payment decisions under FECA. <u>See e.g.</u> <u>Montana</u>, 2011 WL 3862213, at *4; <u>Naughton</u>, 46 F. Supp. 3d at 153. For example, in <u>Montana</u>, the plaintiff was a letter carrier for the USPS and suffered an on-the-job injury in 1998. 2011 WL 3862213, at *1. In 2008, the plaintiff complained of pain and was examined by a physician who imposed various physical limitations due to the plaintiff's injuries. <u>Id</u>. The plaintiff was also assessed using a CA-17 duty status report. <u>Id</u>. at *2. Following a meeting with his supervisor and a union official, Plaintiff was offered a "modified-duty assignment" where he would deliver mail for two hours at one station and then would work for six hours at the main post office. <u>Id</u>. at *3. Plaintiff accepted the new duty assigned and did not petition the OWCP to evaluate whether the new position was suitable for his physical limitations. <u>Id</u>. Nevertheless, shortly thereafter, the plaintiff filed a civil complaint, alleging, among other things, that the USPS had failed to provide him reasonable accommodations. <u>Id</u>. The USPS argued that the District Court lacked jurisdiction to hear Plaintiff's claim under the Rehabilitation Act because FECA is the exclusive remedy for federal workers' compensation claims. <u>Id</u>. at *4.

The Court in <u>Montana</u> disagreed and held that Plaintiff's Rehabilitation Act failure to accommodate claim was not barred by FECA's exclusive jurisdiction. <u>Id</u>. at *5–6. The court based its holding on 8 U.S.C.A. § 8128(b)(1)–(2), which provides that

> (b) The action of the Secretary [of Labor] or his designee in allowing or denying a payment under this subchapter is--
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

8 U.S.C.A. § 8128(b)(1)–(2); <u>Montana</u>, 2011 WL 3862213, at *5. In interpreting the statute, the court in <u>Montana</u> emphasized that § 8128 only makes reference to "payment" and therefore reasoned that FECA's jurisdictional bar only "prohibits review of decisions made by the Secretary of Labor or a designee concerning *payment*, nothing more." <u>Montana</u>, 2011 WL 3862213, at *5 (emphasis added). Because the plaintiff in <u>Montana</u> was not challenging a compensation decision by the OWCP, the court held that FECA's jurisdictional bar did not prohibit the court from considering the plaintiff's reasonable accommodation claim under the Rehabilitation Act. <u>Id</u>. Furthermore, the court reasoned that because FECA has been interpreted as a "limit on the United States' tort liability" and because the plaintiff was seeking reasonable accommodations under the Rehabilitation Act rather than tort damages, the two statutes contemplate different remedies and therefore FECA did not bar Rehabilitation Act jurisdiction. <u>Id</u>. at *5–6.

Similarly, in <u>Naughton v. Gilbane, Inc.</u>, 46 F. Supp. 3d 152, 155 (D.R.H. 2014) the court concluded that FECA does not bar a cause of action under the Rehabilitation Act. In <u>Naughton</u>, the plaintiff was a part-time podiatrist at the Veterans Administration ("VA") Hospital and suffered from asthma which did not arise from any on-the-job injury. <u>Id</u>. at 153. The plaintiff sought to be moved to a different location in the hospital when construction on the hospital

16

introduced "dust and other irritants" to the podiatry clinic. Id. The plaintiff filed suit under the Rehabilitation Act and alleged that the hospital's failure to accommodate his asthma-related request was "a punishment for [his] complaints about the clinic's conditions" and he sought both damages and injunctive relief. Id. The VA filed a motion to dismiss arguing that FECA divested the federal court jurisdiction over the plaintiff's Rehabilitation Act claim. Id. at 155.

The court in Naughton denied the VA's motion to dismiss because "[w]hile there may be some overlap between the statutes because they are both employment related, the Rehabilitation Act and FECA have different goals and provide different remedies for different injuries." Id. at 155. Accordingly, the court noted that the history and language of FECA "demonstrates that Congress designed FECA to be a substitute only for common-law tort actions not for an action based on disability discrimination." Id. at 156 (internal quotations omitted). Because the plaintiff was "seeking different relief, i.e. damages and injunctive relief due to the Veterans Affairs' failure to accommodate his disability, than [what] he seeks under FECA for a different injury, i.e. no-fault work-related injury . . ." his claim was not barred by FECA, and any FECA benefits the plaintiff recovered would merely "operate to reduce any recovery he receives resulting from his Rehabilitation Act claim if there was indeed any overlap in damages." Id. at 157.

### 3. FECA, Limited Duties, & Reasonable Accommodations

In contrast to Montana and Naughton, other courts have adopted a broader stance on FECA's jurisdictional bar, finding that it also precludes certain claims for failure to accommodate under the Rehabilitation Act when related to an employee's limited duties. For example, in Stubler v. Runyon the plaintiff was an employee for the USPS and suffered from carpal tunnel syndrome for which she received compensation under FECA. 892 F. Supp. 228, 230 (W.D. Mo. 1994), aff'd, 56 F.3d 69 (8th Cir.1995) (unpublished table decision). The court

held that although USPS was required to grant limited duties to the plaintiff once she had been injured on the job, "[i]t would be an abuse of the purpose and meaning of both FECA and the Rehabilitation Act to allow an employee to claim FECA benefits, including prolonged assignments to limited duty, on the basis of an "injury," and then later claim that the "injury" was in fact a "handicap" under the Rehabilitation Act." Id. at 229. Accordingly, the court distinguished between injuries which occurred on the job which are governed by FECA and injuries which occurred as a result from an act of discrimination which is governed by the Rehabilitation Act. Id. at 230.

In Meester v. Runyon, 149 F.3d 855, 856 (8th Cir. 1998) the plaintiff was a longtime USPS employee who eventually developed debilitating carpal tunnel syndrome, for which she filed a OWCP claim. Meester, 149 F.3d at 856. The plaintiff was unable to "perform her old job" and the USPS "offered to create several different limited duty positions for [the plaintiff], all of which she rejected as beyond her limitations." Id. Eventually, the Plaintiff's doctor approved one of the limited duty positions for the plaintiff, and the OWCP evaluated that position and found that it was suitable for the plaintiff's physical limitations. Id. Even so, when the plaintiff returned to work, she continued to complain that the position did not sufficiently accommodate her disability. Id. The plaintiff filed suit against the USPS under the Rehabilitation Act, bringing claims for failure to accommodate, disparate treatment, disability harassment, and retaliation. Id. Based on FECA's jurisdictional bar, the district court granted summary judgment on the plaintiff's failure to accommodate claim but allowed her other discrimination claims to proceed to trial. Id.

On appeal before the Eighth Circuit, the Court of Appeals affirmed the decision of the district court which held that FECA's exclusive jurisdiction did not bar all suits under anti-

discrimination laws such as Title VII or the Rehabilitation Act, but that the plaintiff's "unique failure to accommodate claim was barred by FECA." Id. at 857. The Eighth Circuit Court of Appeals reasoned that with regard to the plaintiff's failure to accommodate claim, the plaintiff was not alleging that she could perform the essential functions of her previous job with reasonable accommodation; instead she was asserting that her limited duty position did not adequately accommodate her physical limitations. Id. However, the OWCP had determined that the plaintiff's limited duty position was suitable, and to hold otherwise would mean that the federal courts were reviewing a decision exclusively reserved for the DOL under FECA. Id.

Therefore, the court concluded "[w]e will not allow [the plaintiff] to use the Rehabilitation Act to circumvent Congress's intent. If [the plaintiff's] current position is not "suitable work," her remedy is in an appeal of the Department's decision under [FECA]." Id. In so concluding, the Eighth Circuit held:

> "[A] frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation in performing an alternative position approved by the Department of Labor when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision."

Id. As such, in contrast to Montana and Naughton, the Eighth Circuit held that FECA's jurisdictional bar on "compensation" also includes claims challenging decisions regarding a plaintiff's limited duties under a failure to accommodate claim. In so finding, the Eighth Circuit in Meester decided that the district court was correct that it did not have jurisdiction over the plaintiff's failure to accommodate claim under the Rehabilitation Act but did have jurisdiction over the plaintiff's other Rehabilitation Act disability-discrimination claims. Id. at 856–57.

**D.  The Court Lacks Jurisdiction Over Plaintiff's Failure to Accommodate Claim Under the Rehabilitation Act as it Relates to His Limited Duties**

The holding in <u>Meester</u> provides the most persuasive resolution of the jurisdictional questions when applied to the facts of this case. As explained above, limited duty positions are governed by the OWCP, which has the sole jurisdiction to determine the "suitability" of such positions. <u>Meester</u>, 149 F.3d at 857. In this case, neither party has presented evidence of whether the OWCP ever made a suitability determination for the position in which Plaintiff worked after returning to work on February 27, 2015.[8] However, Plaintiff has introduced evidence which shows that after his January 8, 2015 accident Plaintiff filed a Form CA-17 Duty Status Report dated February 26, 2015 which listed some physical restrictions by his physician. The existence of this form is evidence which supports the notion that Plaintiff had indeed been placed on some limited duty arrangement after February 20, 2015. <u>See</u> 20 C.F.R. § 10.331 ("The employer should use Form CA–17 to obtain interim reports concerning the duty status of an employee with a disabling injury."). Indeed, if OWCP had not accepted his claim the USPS would not have been obligated to provide Plaintiff limited duties. <u>Sharpe</u>, 2001 WL 34039485, at *12 ("If the OWCP rejects the worker's compensation claim of an injured employee, then the USPS is no longer bound by the obligations of the Department of Labor[.]"). Plaintiff also introduced evidence in his response in opposition whereby on April 20, 2015, Plaintiff made a written request for "[a] proper limited duty agreement or a fair job accommodation." ECF Nos. 192 at 7;

---

[8] Defendant alleges that his OWCP claim related to Plaintiff's accident on January 8, 2015 was denied by the OWCP, but cites no evidence in support of that assertion in its motion to dismiss. ECF No. 180 at 9, n. 5. At its motion for summary judgment, the Defendant attempted to admit documentary evidence regarding his OWCP claims, but that evidence was struck because Defendant failed to authenticate said documents. ECF No. 159 at 4–5. However, the documents indicate that with regard to Plaintiff's OWCP claim after his January 8, 2015 accident, the OWCP determined that his claim was "Accepted - COP Elected Medical Benefits Only." ECF No. 152-17 at 8.

192-2. This request further suggests that Plaintiff's limited duty assignment had either ended by April 20, 2015, or that Plaintiff was dissatisfied with his then-existing limited duty arrangement.

Regardless of whether the OWCP determined the suitability of Plaintiff's limited duty position with regards to Plaintiff's physical conditions, the court's jurisdiction is precluded by FECA. Plaintiff alleges that "heavy packages" were not taken off his route after February 20, 2015. However, if Plaintiff was dissatisfied and believed that the position in which he was working after February 20, 2015 was not adequately providing for his lifting restrictions, he could have petitioned the OWCP to make a suitability determination for his limited duties at the USPS. Under FECA the OWCP "has the ultimate authority to determine" if an employee's limited duties exceed the employee's physical limitations. Montana, 2011 WL 3862213, at *2. If, however, the OWCP had already determined that Plaintiff's position was suitable, and Plaintiff, like the plaintiff in Meester, was still unsatisfied that the position did not fully accommodate his disability, his recourse would be to appeal to ECAB, and he cannot use a failure to accommodate claim under the Rehabilitation Act to work around that suitability determination by the DOL. To put it succinctly, if Plaintiff's current position is not "suitable work," his "remedy is in an appeal of the Department's decision under [FECA]." Meester, 149 F.3d at 857.

Additionally, any limited duty arrangement which Plaintiff may have requested or was granted is precluded from being a request for reasonable accommodation under the Rehabilitation Act because limited duty arrangements fall within the jurisdiction of FECA. The prima facie case of a failure to accommodate claim under the Rehabilitation Act requires a showing that the plaintiff (1) suffered from a disability under the meaning of the Act; (2) that the plaintiff was "a qualified individual in that she was able to perform the essential functions of her job"; and (3) despite knowing about the plaintiff's disability, the defendant did not offer a

reasonable accommodation to the Plaintiff. <u>Calero Cerezo v. United States Dep't of Justice</u>, 355 F.3d 6, 20 (1st Cir. 2004). Therefore, for a plaintiff to recover under the Rehabilitation Act, it is required that the plaintiff be able to perform the essential functions of their job. <u>Id</u>. However, limited duties to which an injured employee is entitled under FECA are expressly granted to employees who cannot perform the essential functions of their job.

　　As recognized by several courts, "limited duty assignments are meant to be permanent work assignments that are given to employees who are no longer capable of performing the essential functions of their jobs, and whose workers' compensation claims have been accepted by OWCP." <u>Sizemore</u>, 2008 WL11514999 at *1. Accordingly, these limited duty assignments "may consist of tasks that are subfunctions, and not essential functions, of an existing position, and are specifically tailored for the injured employee[.]" <u>Sharpe</u>, 2001 WL 34039485, at *12. Likewise, the USPS Handbook entitled "Reasonable Accommodation, An Interactive Process" attached as Exhibit 1 to Plaintiff's response in opposition to Defendant's motion to dismiss provides that "[a]s used in this text, the term "limited duty" refers to a temporary assignment for an employee who is unable to perform his or her regular duties due to an occupational illness or injury." ECF No. 192-1 at 64.[9] Therefore, because a limited duty assignment by nature thwarts the "essential

---

[9] Plaintiff calls any differentiation between light duty, limited duty, and reasonable accommodation "nonsense distinctions." ECF No. 192 at 5. Plaintiff attached as an exhibit to his response in opposition the USPS Handbook entitled "Reasonable Accommodation, An Interactive Process" to argue that "light duty" requests are requests for reasonable accommodations. ECF No. 192 at 3; <u>See</u> ECF No. 192-1 at 53. However, the USPS Handbook to which Plaintiff cites communicates that there is a clear distinction between light duty and limited duties. ECF No. 192-1 at 50 ("The terms "limited duty," "light duty," . . . have very specific and different meanings within the Postal Service."). As discussed above, limited duties refers to "a temporary assignment for an employee who is unable to perform his or her regular duties due to an occupational illness or injury." to ECF No. 192-1 at 64. In contrast, the USPS Handbook defines "light duty" as "[w]ork, as defined in a specific collective bargaining agreement, provided to an employee who is unable to perform the full duties of his or her job due to a non-work-related injury or illness." ECF No. 192-1 at 64. As such, the distinction between light and limited duties is that limited duties are given for work-related injuries while light duty is granted for non-work-related injuries. <u>Franklin,</u> 600 F. Supp. 2d at 57 n. 7 ("For workplace injuries, the Postal Service offers "limited duty" assignments, which are distinct from "light duty" assignments for non-workplace injuries."). In this case, Plaintiff's injuries which led to his claim for failure to accommodate were work-related, so limited duty is the applicable term.

functions" element of the reasonable accommodation claim under the Rehabilitation Act, limited duties are a remedy only available under FECA and cannot qualify as a reasonable accommodation under the Rehabilitation Act. Being granted limited duties is a remedy solely available under FECA, and Plaintiff cannot seek to attack his limited duty arrangement under the Rehabilitation Act. Sharpe, 2001 WL 34039485, at *12. Therefore, any claim which Plaintiff seeks to make under the Rehabilitation Act based on limited duties is precluded by the exclusive jurisdiction of FECA.

Because this court lacks subject matter jurisdiction, in this case Plaintiff's failure to accommodate claim under the Rehabilitation Act must be dismissed with prejudice. Furthermore, if Plaintiff alleges that heavy packages were not taken off his route as part of a discriminatory pattern of retaliation in violation of the Rehabilitation Act, such allegations are also barred because Plaintiff's sole remedy for any violation of his limited duties resides solely within the jurisdiction of FECA. See Nicastro v. Runyon, 60 F.Supp.2d 181, 186 (S.D.N.Y.1999) (holding that plaintiff cannot get around FECA's prohibition on judicial review "by collaterally attacking a denial of FECA benefits as retaliatory."). As such, Plaintiff is prohibited from bringing at trial any evidence related to heavy packages not being taken off his route in violation of any limited duties Plaintiff had during the time covered by this case.

## V.   DEFENDANT'S SECOND MOTION TO DISMISS ALLEGING LACK OF SUBJECT MATTER JURISDICTION (ECF No. 183)

Defendant's second motion to dismiss refers to its first Motion to Dismiss and argues that should the court grant Defendant's first motion to dismiss and so find that it lacks subject matter jurisdiction on Plaintiff's failure to accommodate claim, then Plaintiff would have failed to prove "as a matter of law" Plaintiff's discriminatory hostile working environment and retaliation claims

under the Rehabilitation Act. ECF No. 183 at 3–4. Because these two motions overlap significantly, the court will likewise dispose of Plaintiff's second motion to dismiss here.

The Rehabilitation Act commands that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity . . . conducted by . . . the United States Postal Service." McDonough v. Donahoe, 673 F.3d 41, 49 (1st Cir. 2012) (citing Rolland v. Potter, 492 F.3d 45, 47 (1st Cir.2007) (quoting 29 U.S.C. § 794(a)) (internal quotations omitted). To constitute a "qualified individual" under the Rehabilitation Act, "a plaintiff must show first that she possesses the requisite skill, experience, education and other job-related requirements for the position and, second, that she is able to perform the essential functions of the position with or without a reasonable accommodation." Calero Cerezo, 355 F.3d at 22. With regard to a hostile work environment claim specifically, the Plaintiff must also demonstrate that he was disabled under the meaning of the Rehabilitation Act. McDonough, 673 F.3d at 49 ("In order to succeed on her hostile work environment claim [plaintiff] must show the following . . . [that] she was disabled as defined under the Rehabilitation Act . . . ."). However, a plaintiff may assert a claim for retaliation even if the underlying claim for discrimination fails. Colón Fontanez v. Municipality of San Juan, 671 F. Supp. 2d 300, 331 (D.P.R. 2009).

**A. Jurisdiction**

Defendant urges that because limited duty assignments are only given to employees who "are no longer capable of performing the essential functions of the job" then the Plaintiff does not constitute a "qualified individual" under the Rehabilitation Act for purposes of a disability-based hostile work environment claim. ECF No. 193 at 5–6. Taken to its logical conclusion,

24

Defendant's argument would mean that any federal employee who was ever placed on limited duties under FECA could never bring a Rehabilitation Act claim, unless the claim was for retaliation. Many courts, including the Eighth Circuit, in <u>Meester</u>, have rejected this assertion and limited FECA's jurisdictional bar to failure to accommodate claims which overlap with the limited duty remedy under the Rehabilitation Act. <u>Meester</u>, 149 F.3d at 856–57 ("The [district] court did not hold that all discrimination claims are barred under FECA; indeed, it allowed [the plaintiff's] disparate treatment and retaliation claims to proceed to trial. Rather, the district court held that [the plaintiff's] unique failure to accommodate claim was barred by FECA. We are convinced that this ruling was correct."). As already discussed above, FECA and the Rehabilitation Act generally provide for different remedies. <u>See Meester</u>, 149 F.3d at 858–59 ("The Rehabilitation Act is a separate, independent cause of action [from FECA] whose purpose is to redress disability employment discrimination and to provide damages for back pay, compensatory damages, attorney's fees, and injunctive relief by way of accommodation or reinstatement."). Therefore, courts have been particularly reluctant to find that FECA creates a complete "hierarchy of discrimination" whereby making a claim under FECA precludes any cause of action for disability discrimination under the Rehabilitation Act, but not a suit for race or gender-based discrimination. <u>See Naughton</u>, 46 F. Supp. 3d at 155 ("Moreover, if this Court were to follow the Secretary's argument to its logical conclusion, it would establish a "hierarchy of discrimination" allowing employees to seek redress for racial discrimination (under Title VII), but not disability discrimination under the Rehabilitation Act."); <u>Reidy</u>, 971 F. Supp. At 770 ("Conspicuously absent from both FECA and the federal antidiscrimination statutes is any mention of a hierarchy of discrimination, which would demonstrate Congressional intent that FECA preempt only some forms of employment discrimination, namely disability

discrimination—but not others, such as race discrimination."). Therefore, FECA's jurisdictional bar does not apply to Plaintiff's hostile-work-environment disability discrimination claim and retaliation claims under the Rehabilitation Act.

Even assuming *arguendo* that Plaintiff being placed on limited duties constitutes evidence that he could not perform the essential functions of the job, thereby making him an unqualified individual under the Rehabilitation Act, the evidence to which Defendant cites is insufficient to show that at all times pertinent to Plaintiff's disability-discrimination and hostile-work environment claim, Plaintiff was unable to perform the essential functions of his job.

First, Plaintiff's failure to accommodate claim only was relevant to events after February 20, 2015. However, Plaintiff's hostile work environment and retaliation claims under the Rehabilitation Act involve conduct that extended back to Plaintiff's first injury on the job on April 16, 2013. As noted in this court's order and opinion resolving Defendant's motion for summary judgment, for an unspecified period of time after April 16, 2013 Plaintiff performed "limited duty" according to the restrictions established by his doctor in the CA-17. ECF No. 152 at 5, ¶ 39; ECF No. 152-1 at 99, ¶¶ 18–25; 100, ¶¶ 1–9; 104, ¶¶ 1–25; 105, ¶¶ 1–21. At summary judgment the Plaintiff also introduced evidence of CA-17 Duty Status Reports which he submitted and which his physician recommended limited duties on from September 11, 2013 through November 6, 2013, from December 11, 2013 until January 31, 2014, from June 9, 2014 until July 21, 2014, from July 31 2014 until August 26, 2014, and from August 6, 2015 through September 3, 2015. ECF No. 157-28 at 3–9. The parties have not cited evidence to show that Plaintiff was on limited duties between January 31, 2014 and June 9, 2014 or on limited duties between August 26, 2014 and February 27, 2015. Additionally, Plaintiff's CA-17 "Duty Status Report" resulting from his January 8, 2015 injury extends from February 27, 2015 to the "date of

next appointment" on March 12, 2015. ECF No. 183-1. By April 20, 2015, Plaintiff also made a written request for "[a] proper limited duty agreement or a fair job accommodation." ECF Nos. 192 at 7; 192-2. This request further suggests that Plaintiff's limited duty assignment had ended between March 12, 2015 and April 20, 2015, or at a minimum shows that Plaintiff was dissatisfied with his then-existing limited duty arrangement. Therefore, it is not clear from the evidence in the record that Plaintiff was on limited duties after March 12, 2015—during which a large proportion of the alleged acts creating a hostile work environment and unjustified discipline occurred. If Plaintiff was not on limited duties, he may have been able to perform the essential functions of his job to constitute a "qualified individual" under the Rehabilitation Act. It would therefore be inappropriate to grant Defendant's motion to dismiss when the facts do not unequivocally indicate that Plaintiff was performing limited duties at all times relevant to his remaining claims under the Rehabilitation Act.

Additionally, the court lacks evidence in the record which shows that the OWCP accepted all of Plaintiff's OWCP claims for each incident. Neither party has presented admissible evidence into the record of whether the OWCP accepted Plaintiff's OWCP claim from February 27, 2015. As previously stated, Defendant alleges that Plaintiff's OWCP claim related to Plaintiff's accident on January 8, 2015 was denied by the OWCP, but cites no evidence in support of that assertion in its motion to dismiss. ECF No. 180 at 9, n. 5. At summary judgment, the Defendant attempted to admit documentary evidence regarding his OWCP claims, but that evidence was struck because Defendant failed to authenticate said documents. ECF No. 159 at 4–5.[10] Therefore, it is also unclear from the record for what periods Plaintiff's OWCP claims were actually accepted, and he was therefore placed on limited duties. While any

_____

[10] However, the documents indicate that with regard to Plaintiff's OWCP claim after his January 8, 2015 accident, the OWCP determined that his claim was "Accepted - COP Elected Medical Benefits Only." ECF No. 152-17 at 8.

objection Plaintiff had to a limited duty arrangement would require the Plaintiff to use the mechanisms under the sole jurisdiction of FECA, if Plaintiff was not on limited duties, it does not necessarily mean that he Plaintiff could not perform the essential functions of his job.

Finally, even if while on limited duties Plaintiff could not perform the essential functions of his job and his underlying discrimination and hostile work environment claim were to fail, Plaintiff could nevertheless still assert a claim for retaliation for his Rehabilitation Act protected conduct, such as his contacting the EEOC on April 6, 2015. For the foregoing reasons, as a matter of law and based on the evidence in the record Defendant fails to show that FECA's sole jurisdiction precludes the court from hearing plaintiff's remaining Rehabilitation Act hostile-work-environment disability discrimination or retaliation claims at trial.

### B.  Defendant's Attack on Plaintiff's Prima Facie Case is Not Jurisdictional

Because there is no jurisdictional bar raised in Defendant's second motion to dismiss, what remains of Defendant's motion alleging lack of subject matter jurisdiction is an untimely Rule 12(b)(6) motion to dismiss for failure to state a claim. As discussed above, Defendant argues that when Plaintiff was on limited duties it meant that he was "no longer capable of performing the essential functions of the job" and therefore, he could not meet the element of being a "qualified individual" for purposes of the Rehabilitation Act. ECF No. 193 at 5–6. Defendant contends that if Plaintiff is not a qualified individual, he also could not have been "subject to an adverse employment action" for the purposes of a retaliation claim under the Rehabilitation Act. ECF No. 193 at 6. Similarly, Defendant argues at length in its second motion to dismiss that Plaintiff's physical restrictions also did not constitute a disability under the meaning of the Rehabilitation Act. ECF No. 183 at 6. However, these arguments in Defendant's second motion to dismiss do not go to lack of subject matter jurisdiction. Rather, because they

attack the elements of Plaintiff's prima facie case, they can only be properly considered as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted or converted into a motion for summary judgment.

A motion to dismiss filed to attack a plaintiff's plausible claim for relief should be brought under Federal Rule of Civil Procedure 12(b)(6) rather than Rule 12(b)(1). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief. Rodríguez Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'" Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). In suits for discrimination and retaliation "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim. Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial—in a discrimination case, the prima facie standard—[a plaintiff] need not plead facts sufficient to establish a prima facie case." Rodríguez Reyes v. Molina Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). Therefore, "[t]he prima facie case is an evidentiary model, not a pleading standard." Id. at 51. Moreover, unlike a Rule 12(b)(1) motion to dismiss where the court may "consider materials outside the pleadings" a Rule 12(b)(6) motion must also be decided on the basis of the pleadings only, and if "matters outside the pleading are presented to and not excluded by the court, the motion may be treated as one for summary judgment and disposed of as provided in rule 56." Vargas Ruíz v. Golden Arch Development, Inc., 283 F. Supp. 2d 450, 458 (D.P.R. 2003) (citing Garita Hotel Ltd. v. Ponce

Federal Bank, 958 F.2d 15, 18 (1st Cir. 1992) ("[T]he test is not whether supplementary materials were filed, but whether the court actually took cognizance of them, or invoked Rule 56, in arriving at its decision."); González, 284 F.3d at 288.

Insofar as Defendant's second motion to dismiss also attacks Plaintiff's prima facie case on all his Rehabilitation Act claims, those portions of its second motion to dismiss are not properly brought under a Rule 12(b)(1) motion to dismiss for lack of jurisdiction but are rather only appropriately and timely raised in a Rule 12(b)(6) motion to dismiss or motion for summary judgment. However, Plaintiff filed his amended complaint on December 17, 2018 and Defendant filed its answer on February 7, 2019 without filing a Rule 12(b)(6) motion. ECF Nos. 28, 29. Furthermore, the deadline to file motions for summary judgment expired on October 4, 2021. ECF No. 149 at 1. Because Defendant's second motion to dismiss is an untimely Rule 12(b)(6) motion which has been filed both after Defendant's responsive pleadings and after the filing of motions for summary judgment, it must be denied.[11] Moreover, the court filed its opinion and order on Defendant's motion for summary judgment on March 24, 2022. ECF No. 159. Defendant's second motion to dismiss was filed on May 31, 2022, which was over two months after this court's resolution of summary judgment and almost eight months after the deadline to file motions for summary judgment expired. ECF No. 183. Because Defendant's remaining arguments are not proper under a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, regardless of whether Defendant's second motion to dismiss is ultimately characterized as a Rule 12(b)(6) motion, converted to a motion for summary judgment, or

---

[11] Additionally, Plaintiff also goes to great length in its second motion to dismiss to argue that Plaintiff cannot muster a prima facie case because Plaintiff is not disabled under the meaning of the Rehabilitation Act. Defendant raised this argument in their motion for summary judgment and it was fully discussed and disposed of in the court's opinion and order. As such, the portions of Defendant's motion which seeks to relitigate this point is most properly categorized as an untimely motion for reconsideration which is hereby denied.

considered as a motion for reconsideration, Defendant's motion is untimely and is denied on that basis.

**VI.    CONCLUSION**

For the forgoing reasons, Defendant's "Motion to Dismiss Plaintiff's Failure to Accommodate Claim Based on Lack of Subject Matter Jurisdiction" is GRANTED. Because the court lack's jurisdiction over that claim, Plaintiff's failure to accommodate claim under the Rehabilitation Act is DISMISSED WITH PREJUDICE. Likewise, any retaliatory failure to accommodate claim under the Rehabilitation Act based on the Defendant's denial or refusal to abide by a limited duty arrangement is also DISMISSED WITH PREJUDICE.

However, Defendant's "Motion to Dismiss Plaintiff's Hostile Working Environment and Retaliation Claims Under the Rehabilitation Act Based on Lack of Subject Matter Jurisdiction" is DENIED. Therefore, at this time of the filing of this opinion and order, the claims that remain outstanding are those for retaliation under the Rehabilitation Act, ADEA, and FMLA; Plaintiffs' hostile-work-environment disability discrimination claims under the Rehabilitation Act; and Plaintiff's claim for interference with his FMLA substantive rights.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of July, 2022.

s/Marcos E. López
U.S. Magistrate Judge