**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ORLANDO GONZÁLEZ TOMASINI, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES POSTAL SERVICE, et al., <br><br> Defendants. | CIVIL NO.: 17-1552 (MEL) |

**OPINION & ORDER**

Pending before the court is Plaintiff Orlando González Tomasini's ("Plaintiff") three motions *in limine* "To Exclude the Testimony of Juliette Irizarry" (ECF No. 194), "To Exclude Any Mention or Reference of Criminal Investigations Initiated By Juliette Irizarry" (ECF No. 200), and "To Exclude Any Mention or Reference to Filings for Protective Orders from Juliette Irizarry" (ECF No. 201). In the motions, Plaintiff seeks to exclude the testimony of his ex-wife, Ms. Juliette Irizarry ("Ms. Irizarry"), and also to exclude from trial any reference to criminal investigations and protective orders regarding Plaintiff which Ms. Irizarry initiated, requested, or obtained. ECF Nos. 194, 200, 201. Defendant filed an omnibus response in opposition to these three motions *in limine* filed by Plaintiff and other motions *in limine* which Plaintiff has also filed. ECF No. 212.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On December 17, 2018 Plaintiff filed an amended complaint against USPS and its Postmaster General in his official capacity. ECF No. 28. In his complaint, Plaintiff alleges violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Rehabilitation Act, 29 U.S.C. § 791 et seq., and the Family Medical Leave Act ("FMLA"), 29

U.S.C. § 2601 et seq.[1] Plaintiff alleges that his employer, the USPS, subjected him to age and disability discrimination, interfered with his substantive rights under the FMLA, and retaliated against the Plaintiff for protected activity under each of the above Acts. Defendant filed a motion for summary judgment which was granted in part and denied in part on March 24, 2022. ECF No. 159. The parties filed their revised joint proposed pretrial order on June 8, 2022. ECF No. 187. In the revised joint proposed pretrial order, Defendant declared its intent to call Ms. Irizarry as a fact witness, and anticipates that,

> Ms. Irizarry will testify about her personal knowledge of Plaintiff Orlando González-Tomasini, his work routine, performance, and interactions with personnel at the USPS Bayamon Branch Office. She will also testify about the nature and causation of Plaintiff's alleged work-related injuries and the treatment he sought or received regarding those conditions. Ms. Irizarry will also testify regarding personal knowledge about any alleged monetary or emotional damages suffered by Plaintiff due to his alleged work-related injuries and his experiences as a mail carrier at the USPS from 2013 through 2017. She will explain why she refused to be a plaintiff in this case and will address Plaintiff's mitigation of damages, or lack thereof.

ECF No. 187 at 102–03. In response, Plaintiff filed his first motion *in limine* with regard to Ms. Irizarry, seeking to exclude Ms. Irizarry's testimony under the marital communications privilege. ECF No. 194.

Additionally, in the parties' briefs regarding Plaintiff's second motion *in limine* related to Ms. Irizarry, the parties informed the court that Ms. Irizarry had made criminal complaints against Plaintiff of engaging in criminal conduct against Ms. Irizarry's minor daughter— Plaintiff's stepdaughter. ECF No. 200 at 2; ECF No. 212 at 7. Plaintiff described the nature of the accusations as "lascivious conduct" while Defendant expressed that Plaintiff had been accused of "sexual abuse" of his stepdaughter. ECF No. 200 at 2; ECF No. 212 at 7. According

---

[1] Plaintiff's claims for violations of the Federal Tort Claims Act ("FTCA") and Puerto Rico law claims under 31 L.P.R.A. §§ 5141, 5142 were dismissed by the court when ruling upon Defendant's original motion to dismiss filed on September 4, 2019. ECF No. 46.

to Plaintiff's brief, Ms. Irizarry's complaints resulted in criminal investigations in Florida, Virginia, and Puerto Rico. ECF No. 200 at 2. Plaintiff maintains that Plaintiff has never been arrested as a result of these investigations and Plaintiff writes that the "charges . . . were dismissed" in Florida and Virginia. ECF No. 200 at 3. Defendant does not dispute Plaintiff's recitation of the facts. Plaintiff also communicated that the Bayamón Office of the Puerto Rico Department of Justice informed that "they are still investigating" Ms. Irizarry's complaint filed in Puerto Rico against Plaintiff three years ago on February 5, 2019—a fact which Defendant also does not dispute. ECF No. 200 at 3. Plaintiff requests that the court exclude Defendant from "making any comment or attempting to elicit testimony or questioning or any evidence" about the aforementioned criminal investigations at trial. ECF No. 200 at 6.

Finally, in Plaintiff's third motion *in limine* related to Ms. Irizarry, Plaintiff explains that Ms. Irizarry has obtained an "*ex parte* temporary protective order in an *ex*[ ]*parte* proceeding in the state of Virginia" that has since expired. ECF No. 201 at 2. Plaintiff also communicates that Ms. Irizarry sought but was denied protective orders in Florida and Puerto Rico as well. ECF No. 201 at 2. Defendant does not dispute any of Plaintiff's factual contentions. Plaintiff requests that Defendant be precluded from "referring to, interrogating, or attempting to convey and/or suggest to the jury the existence of the expired protective order" at trial. ECF No. 201 at 4.

II.   ANALYSIS

### A. Plaintiff's Motion to Exclude the Testimony of Plaintiff's Ex-Wife, Juliette Irizarry

In Plaintiff's first motion *in limine* regarding Ms. Irizarry, Plaintiff argues that Ms. Irizarry's testimony is barred by the marital communications privilege because the Plaintiff's statements about which Ms. Irizarry will testify were made while she was married to Plaintiff. ECF No. 194 at 3. Plaintiff maintains that the marital communications privilege can be

3

invoked by Plaintiff to prevent his now-ex-wife from testifying against him about communications made during their marital relationship. ECF No. 194 at 4. Under Federal Rule of Evidence 501, common law privileges may lead to the exclusion of relevant evidence. Fed. R. Evid. 501 ("The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege . . . ."). The Court of Appeals for the First Circuit has recognized that under the common law there exists "two related but distinct marital privileges: (1) the spousal testimony privilege, which allows one spouse to refuse to testify adversely against the other in criminal or related proceedings; and (2) the marital communications privilege," which permits a spouse to refuse to testify, and allows a party to bar "his spouse or former spouse from testifying, as to any confidential communications made during their marriage." United States v. Breton, 740 F.3d 1, 9–10 (1st Cir. 2014). Because the privilege "against adverse spousal testimony, is only applicable in criminal actions" the first privilege does not apply in this case and only the marital communications privilege is at issue. Jiménez v. Amgen Mfg. Ltd., 692 F. Supp. 2d 219, 222 (D.P.R. 2010). Plaintiff is therefore correct that the marital communications privilege allows him to prevent his ex-wife from testifying regarding confidential communications which were made during their marriage. Id.

      Defendant, however, argues that while Ms. Irizarry may be precluded from revealing the contents of private "communicative gestures or statements" between her and Plaintiff, the marital communications privilege does not bar testimony about communications between the spouses when third parties were present, nor does it preclude Ms. Irizarry from testifying about her observations of "Plaintiff's work and leave schedule, conversations she overhead between Plaintiff and his co-workers and advisors, advi[c]e provided by co-worker and advisors to Plaintiff in her presence, what she saw Plaintiff do with medications prescribed to him,

4

Plaintiff's manifested physical and mental capacities, and what she did or thought regarding the events and incidents she witnessed[.]" ECF No. 212 at 5–6.

While marital communications are presumptively confidential, the Court of Appeals for the First Circuit has held that the marital communications privilege, "like others, is not limitless and the courts must take care to apply it only to the extent necessary to achieve its underlying goals." United States v. Breton, 740 F.3d 1, 10 (1st Cir. 2014). Accordingly, several courts have held that although the extent of the privilege is broader than conversations and writings between spouses, protected confidential communications must at least consist of utterances, expressions, acts, or gestures which are intended to convey a message between spouses. Pereira v. United States, 347 U.S. 1, 7 (1954) ("The privilege, generally, extends only to utterances, and not to acts."); Espino, 317 F.3d 788, 795–96 (8th Cir. 2003) ("[I]t is well settled that the communications to which the privilege applies have been limited to utterances or expressions intended by one spouse to convey a message to another."); In re Witness Before Grand Jury, 791 F.2d 234, 239 (2d Cir. 1986) ("[T]he communications privilege is unavailable to [the defendant] because most of the evidence sought by the grand jury does not involve marital "communications," that is, utterances or expressions intended to convey information between spouses."); United States v. Klayer, 707 F.2d 892, 894 (6th Cir. 1983) ("[T]his Court approves the well-settled body of authority which holds that the privilege extends 'only to utterances or expressions intended by one spouse to convey a message to the other[.]'"). Additionally, because the marital communications privilege only protects confidential communications, the privilege is inapplicable to communications between spouses which were made in the presence of third parties. Pereira, 347 U.S. at 6 ("The presence of a third party negatives the presumption of privacy" under the marital communications privilege); United States v. Dunbar, 553 F.3d 48, 58

5

(1st Cir. 2009) ("While marital communications are privileged, the marital privilege protects only confidential communications. . . . Since the police car was not a reasonably confidential place to talk, Dunbar's statements to Boisvert were not protected.").

For example, in Espino, a criminal appeal before the Eighth Circuit Court of Appeals, the court concluded that the criminal defendant's invocation of the marital communications privilege did not apply because the defendant cited no facts which indicated "the presence of at least a gesture that is communicative or intended by one spouse to convey a message to the other." Espino, 317 F.3d at 795. As such, the Eight Circuit Court of Appeals upheld the District Court's order on the defendant's motion *in limine* which "precluded the government from introducing evidence of any conversations between [the defendant and his spouse] during the course of the marriage except for conversations that took place in the presence of third parties", but which allowed the government to introduce evidence through the defendant's spouse's testimony that was adverse to defendant if it involved defendant's "conduct rather than his communications . . . as long as it did not involve a communicative gesture." Id. at 795–96 ("As such, the District Court did not err in admitting Goatley's testimony under the marital confidential communications privilege."). The court therefore permitted the defendant's spouse to testify "on her observations of [the defendant's] conduct and actions involving his drug trade before and during the course of their marriage." Id. at 796.

Regarding communicative gestures or acts, by way of example, courts have held that intimate sex acts between marriage partners may be considered communicative acts covered by the privilege, whereas the marital communications privilege did not bar testimony by a spouse describing how she observed her husband use cocaine, testimony regarding property which the spouses owned together, or testimony about one spouse giving the other spouse money. United

States v. Bahe, 128 F.3d 1440, 1445 (10th Cir. 1997) ("We believe the accepted norm in this country is that intimate sex acts between marriage partners are communication and an important expression of love."); United States v. Lofton, 957 F.2d 476, 477 (7th Cir. 1992) ("[A]cts observed by Lofton's wife are not privileged, any testimony regarding her observation of his use of cocaine or her knowledge whether the package at issue was for him was properly admitted."); Klayer, 707 F.2d at 895 (allowing the defendant's spouse to testify that the couple "never owned a $4,000 silver tray"); United States v. Hook, 781 F.2d 1166, 1173 n. 11 (6th Cir. 1986) ("[W]e reject Hook's contention that acts of giving his wife money to pay household bills were communicative acts protected by the federal common law privilege for confidential marital communications.").

In light of the above case law, Ms. Irizarry will be permitted to testify about statements made by Plaintiff to her in the presence of third parties, statements made by Plaintiff to third parties in her presence, and as to her observations of Plaintiff's conduct or acts during their marriage which did not involve a communicative gesture. However, Ms. Irizarry must be precluded from testifying about any utterances, expressions, acts, or gestures by which Plaintiff or Ms. Irizarry conveyed a message to one another during their marriage in private. Therefore, Ms. Irizarry may testify about personal knowledge as to her observations of Plaintiff's "lifestyle through their more than six years of marriage, his home and work routine" ECF No. 212 at 3. As explained further below, the marital privilege also does not bar Ms. Irizarry from testifying regarding "what she saw Plaintiff do with medications prescribed to him, Plaintiff's manifested physical and mental capacities," and what she herself did. ECF No. 212 at 5–6. Nevertheless, Ms. Irizarry will be precluded from testifying about Plaintiff's "work and leave schedule", "work performance", "interactions with personnel at the USPS Bayamón Branch Office", "work-related

7

injuries, . . . the treatment he sought or received", or "monetary or emotional damages suffered by Plaintiff" if Ms. Irizarry's basis for her knowledge is not based on her own observations and was only obtained through confidential communications with Plaintiff. She also would be precluded from testifying about statements made by co-workers and advisors to Plaintiff in her presence insofar as her testimony regarding those conversations constitutes hearsay. ECF No. 212 at 5–6.

For example, Plaintiff cites several statements allegedly made by Ms. Irizarry in a sworn statement before her deposition in which she "reveals what she intends to testify to the jury[.]" ECF No. 194 at 5. Plaintiff argues that these statements violate the marital communications privilege should Ms. Irizarry provide the same testimony at trial. ECF No. 194 at 5. To illustrate the general application of the above holding, these statements will be addressed in turn below.

First, Plaintiff asserts that Ms. Irizarry declared that she intends to testify that,

> 3. [On] one occasion, while I was in the kitchen at my house in Puerto Rico, I heard my ex-husband say, "I'm going to take advantage of this situation and I will not go back to work. You'll see what a lawsuit I will file against those people, they can got fuck themselves." In that moment, I found out that my ex-husband did not have a real case.
>
> 4. The day before he reported a work injury at the post office in which he supposedly hit his knee, I arrived from work and found my ex-husband seating [sic] in the living room putting ice on his knee. When I asked him what had happened, he told me, "I fell and I hit my knee playing basketball with Kevin."

ECF No. 194 at 5. Both of these statements must be excluded from trial under the marital communications privilege except for Ms. Irizarry's observation that she found Plaintiff seated in the living room and putting ice on his knee. The remaining statements were utterances that constitute confidential communications between spouses and Ms. Irizarry cannot testify to those statements under the marital communications privilege, as there is no indication of the presence of third parties who would render those communications non-confidential. Furthermore, her

statement to the effect that "In that moment, I found out that my ex-husband did not have a real case" constitutes an unhelpful lay opinion into the ultimate issue of the case and is precluded. See e.g. United States v. Sanabria, 645 F.3d 505, 516 (1st Cir. 2011) ("However, lay opinion testimony on the ultimate issue in a case must satisfy Rule 701's helpfulness requirement, and "seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness'[s].. . .") (internal quotations omitted).

>Plaintiff also asserts that Ms. Irizarry intends to testify to the following:

>7. My ex-husband's psychiatrist prescribed him pills and he would not take them.

>9. When I asked my ex-husband why he kept picking up the pills at the pharmacy if he was not taking them, he told me that due to the claim he had to keep picking up the medicine at the pharmacy in order to have evidence of being under treatment because otherwise they would know he was not taking them.

ECF No. 194 at 5. With regard to these statements, Ms. Irizarry would only be able to testify that she observed that Plaintiff picked up medicine at the pharmacy and that Plaintiff did not take the pills, because such testimony constitutes acts which Ms. Irizarry observed and which were not acts done by Plaintiff for the purpose of communicating any message to Ms. Irizarry. However, Ms. Irizarry would be precluded from testifying about what Plaintiff told her about why was picking up the pills and why he was not taking them as long as those communications were not made in the presence of a third party so as to render them non-confidential. Furthermore, to pass the relevance test under Federal Rule of Evidence 202, Ms. Irizarry would have to specify at what time she observed the above conduct between April 2013, when the alleged disabling injury of Plaintiff occurred and Plaintiff's last day of work at the USPS Office in Bayamón on October 29, 2015.

According to Plaintiff, Ms. Irizarry also intends to testify that "My ex-husband had as an advisor a man who had brought and won a claim against the post office. This person told him how to look for evidence to support his case, etc." ECF No. 194 at 5. As already discussed above, communications which occurred between Ms. Irizarry and Plaintiff in the presence of a third party are not protected by the marital communications privilege.[2]. See e.g. Klayer, 707 F.2d at 895 ("It is significant that both the insurance adjuster and Klayer were "on the phone" when Klayer requested permission from his wife to affix her signature to the insurance claim; the presence of the third party qualified the conversation as an exception to the privilege for confidential marital communications."). However, Ms. Irizarry is precluded from testifying about what the adviser said as to the person who "told [Plaintiff] how to look for evidence to support his case, etc." because none of the communications were made to her by the Plaintiff, and her testimony about what was said to Plaintiff constitutes hearsay insofar as it is being offered for the truth of the matter asserted. ECF No. 194 at 5.

The marital communications privilege is also inapplicable to the testifying spouse's own acts which did not amount to a communication. Pereira, 347 U.S. at 6. Therefore, Ms. Irizarry's intended testimony to the effect that "[a]fter Hurricane María, I moved to Miami, Florida with my kids, and my ex-husband stayed in Puerto Rico because of the issue with the post office and the social security" and her proposed testimony "I did not accompanied (sic) my ex-husband to any medical appointment because I knew this was a fraud" (ECF No. 194 at 5) are not protected by the privilege first because these statements pertains primarily to Ms. Irizarry's own acts, and secondly because the conduct of Plaintiff staying in Puerto Rico is one which Ms. Irizarry

---

[2] This is not to preempt a finding that another privilege precludes Ms. Irizarry's testimony on such matter, such as, for example, the communications were those made to an attorney representing both Plaintiff and Ms. Irizarry while both spouses and the attorney were present.

10

observed. However, Ms. Irizarry would not be permitted to testify about her opinion that Plaintiff's case was a "fraud" because such a statement is a layperson opinion on an ultimate issue in this case—namely, whether Plaintiff is disabled under the meaning of the Rehabilitation Act. Additionally, Ms. Irizarry is precluded from explaining why Plaintiff stayed in Puerto Rico if her personal knowledge[3] is only the result of confidential communications between herself and Plaintiff. Furthermore, Plaintiff believes that Ms. Irizarry wrote in her affidavit that she intended to testify that

> One time, my ex-husband visited us at Miami. He asked me to take him to the Social Security Office in Hialeah to request disability. That time, he asked me if he could put me down as his guardian and I told him no. I told him I was not going to help him with that because I knew he was not disabled.

ECF No. 194 at 6. Ms. Irizarry is precluded from testifying about Plaintiff's request to take him to the Social Security Office and his request to put Ms. Irizarry down as his guardian as long as such communications were made in confidence during the marriage. While Ms. Irizarry would not be precluded from testifying about her layperson perceptions of Plaintiff's physical injuries or conditions, her testimony must not express a medical opinion or legal opinion on the ultimate issues of the case, such as whether she believes Plaintiff was "disabled" or committed "fraud." ECF No. 194 at 5. See e.g. United States v. Sanabria, 645 F.3d 505, 516 (1st Cir. 2011).

---

[3] Plaintiff also argues that Ms. Irizarry has no "personal knowledge" of the issues in this case as required by Rule 602 of the Federal Rules of Evidence and that Ms. Irizarry has no knowledge about Plaintiff's working environment, his injuries, or his treatment and interaction with his supervisors. ECF No. 194 at 7. However, none of the statements to which Plaintiff cites involves issues of which Ms. Irizarry does not have personal knowledge. The proposed statements concern communications or acts which she observed, overheard, or did herself. Ms. Irizarry would be precluded from testifying as to matters which she did not see, overhear, or do herself. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."); Fed. R. Evid. 602 advisory committee's note to 1972 Proposed Rules ("[A] witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact"). Defendant's opposition to Plaintiff's motion *in limine* to exclude the testimony of Ms. Irizarry (ECF No. 212) makes clear that Defendant only seeks to introduce testimony which is based in Ms. Irizarry's personal knowledge. ECF No. 212 at 3, 5–6.

In sum, the nature of Ms. Irizarry's testimony as described by the parties does not warrant an order by the court that Ms. Irizarry be barred from testifying completely. Ms. Irizarry may be permitted to testify but she cannot testify as to confidential (i.e. not made in the presence of third parties) communicative utterances, expressions, acts, or gestures, which conveyed a message between herself and Plaintiff during the duration of their marriage.[4]

### B. Plaintiff's Motion to Exclude Any Mention or Reference of Criminal Investigations and Filings for Protective Orders Related to Juliette Irizarry

Plaintiff also argues that the prejudice Ms. Irizarry's testimony will cause with the jury far outweighs its probative value because she will testify that Plaintiff "did not suffer any physical or mental injuries, that he was not mistreated, or discriminated against, that he was not retaliated against, at the Bayamón Branch of the USPS, that he is a liar and a fraudster, and maybe even a pedophile." ECF No. 194 at 10. Particularly, as expressed in Plaintiff's various motions *in limine* related to Ms. Irizarry, Plaintiff is concerned about the introduction of evidence through Ms. Irizarry's testimony or otherwise concerning the criminal investigations and the protective orders for which Ms. Irizarry filed or sought against Plaintiff. ECF Nos. 200, 201. Indeed, Plaintiff contends that several statements which Ms. Irizarry declared she would make at trial concern Ms. Irizarry's filing of criminal complaints against Plaintiff. See e.g. ECF No. 194 at 6. For example, according to Plaintiff, Ms. Irizarry declared an intent to testify that,

> 12. One day, I arrived at my house in Miami, and I found my daughter crying. When I asked her what was wrong, she told me about the lewd acts committed by my ex-husband. I called the police, they came, and they took my daughter's statement as well as mine.
>
> 13. I filed a criminal report against him in Miami for what he did to my daughter. . . .

---

[4] Regarding Ms. Irizarry's intent to explain why she refused to be a plaintiff in this case, such testimony is irrelevant and thus, inadmissible.

12

> 15. When my daughter confessed that she had not said anything before because he had threaten[ed] her, I was afraid for our safety and I moved to Virginia. . . .
>
> 17. I had to travel to Puerto Rico with my daughter to file a criminal report against [Plaintiff] for sexual abuse against my daughter.").

ECF No. 194 at 6. Defendant, however, responds in its motion in opposition to Plaintiff's motions *in limine* that it "does not propose to enter testimonial evidence regarding (a) the criminal complaints filed against Plaintiff by Ms. Irizarry for the sexual abuse of her minor daughter, or (b) the protective orders sought against him by Ms. Irizarry during and after their divorce proceedings in [its] case[-]in[-]chief." ECF No. 212 at 7. Instead, Defendant asks the court to reserve judgment as to the admissibility of this evidence until trial if it becomes "pertinent and admissible" to impeach Plaintiff under Rule 608 should Plaintiff introduce evidence of his good moral character or should any attempt be made to impeach Ms. Irizarry's credibility. ECF No. 212 at 7.

Under Federal Rule of Evidence 401 and 402 only evidence which is relevant is admissible, and evidence is considered relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401, 402. However, Federal Rule of Evidence 403 also provides that relevant evidence must also be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court of Appeals for the First Circuit has highlighted that Rule 403 is designed to protect only "against unfair prejudice, not against all prejudice." United States v. Whitney, 524 F.3d 134, 141 (1st Cir. 2008); see also United States v. Bauzó Santiago, 51 F. Supp. 3d 198, 199 (D.P.R. 2014) ("In balancing the scales of Rule 403, it is important to note that only unfair prejudice is to be

13

avoided, as by design all evidence is meant to be prejudicial") (citation and internal quotation omitted). "Unfair prejudice" typically means that the evidence invites the jury to render a verdict on an improper basis. United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000) ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, *though not necessarily,* an emotional one.") (citing Fed. R. Evid. 403 advisory committee's note to 1972 Proposed Rules) (emphasis in original). For example, the Court of Appeals for the First Circuit has declared that courts should be cautious in admitting evidence regarding a "shocking or heinous crime likely to inflame the jury." Varoudakis, 233 F.3d at 122 (citing United States v. Moccia, 681 F.2d 61, 64 (1st Cir. 1982)).

   1. **The Criminal Investigations**

There exists an exception to the marital communications privilege where one spouse commits an offense against their spouse or the child of either spouse. Breton, 740 F.3d at 10–11 ("there is overwhelming state legislative and judicial authority for the proposition that a crime against a spouse's child renders the marital communications privilege inapplicable."). Even so, while there is a marital communications exception to Ms. Irizarry testifying about a crime allegedly perpetrated by Plaintiff against her daughter, the probative value of any evidence about the criminal complaints and investigations of Plaintiff, whether it be introduced through Ms. Irizarry's testimony or through a different source, is vastly outweighed by the potential for unfair prejudice. Plaintiff is not on trial in this case for any crime against Ms. Irizarry or his stepdaughter, and the relevance of evidence relating to the criminal investigations is of almost no consequence in helping the jury to decide Plaintiff's discrimination claims brought against Defendant. Moreover, the parties have not brought to the attention of the court that Plaintiff has been charged, arrested or convicted for any alleged conduct of the Plaintiff with his stepdaughter.

There is, however, a significant risk that a jury's passions may be inflamed upon hearing evidence indicating that Plaintiff was as accused by his ex-wife—let alone that investigations were launched—of lascivious acts or sexual abuse of a minor. According to Plaintiff, at least one of these investigations is also still ongoing. Such prejudice against Plaintiff is unfair because the evidence of those criminal investigations, which have no direct relevance with respect to Plaintiff's claims in this case, would invite the jury to render a verdict based on an improper or emotional reaction upon learning that Plaintiff has been investigated for criminal sexual activity with a child. Furthermore, any limiting instruction is unlikely to lessen the unfair prejudice if the jury hears evidence regarding the criminal investigations involving Plaintiff and his stepdaughter.

Nevertheless, the court finds Defendant's argument convincing regarding Plaintiff opening the door to impeachment through references to his own good moral character if—and only if—Plaintiff refers to never having been investigated for a crime. There is no evidence before the court regarding whether Plaintiff has ever been convicted of a crime, and he may testify to that effect without being impeached by evidence of criminal investigations. However, Plaintiff must be careful not to open the door by attempting to bolster the jury's perception of his own good moral character by testifying that he has never been investigated for a crime of any type. Therefore with regard to the three criminal complaints and three criminal investigations into Plaintiff's alleged criminal acts with his stepdaughter, the court precludes any mention of the criminal complaints or investigations at trial during Defendant's case-in-chief, on cross examination, or redirect of any witness in this case, unless Plaintiff clearly and explicitly opens the door by making reference to having never been the subject of a criminal investigation.

### 2. The Protective Orders

In contrast, information about the existence of any of the protective orders sought against Plaintiff by Ms. Irizarry <u>that were actually issued by a court</u> would be admissible for the sole purpose of cross-examining Plaintiff's expert witness María T. Margarida Juliá, Psy.D. ("Dr. Margarida"). In the revised joint proposed pretrial order, Plaintiff declared his intent to call Dr. Margarida as an expert witness "who will testify as to her evaluation of Plaintiff González Tomasini and will offer her opinion as to his serious mental and emotional damages caused by the Defendant USPS." ECF No. 187 at 100. Dr. Margarida conducted a "Neuropsychological Evaluation" of Plaintiff on September 16, 2019 which contains her findings and conclusions and has been submitted by Plaintiff as Dr. Margarida's expert report. ECF Nos. 211-1, 232-1.[5]

There is significant probative value in questioning Dr. Margarida regarding the protective orders which Ms. Irizarry obtained from a court against Plaintiff, particularly to determine whether Dr. Margarida's expert report is a complete assessment of the circumstances causing psychological and emotional harm to Plaintiff beyond his alleged mistreatment by the USPS. ECF No. 201 at 2. If Plaintiff was aware of a protective order, it may have been a stressor impacting Plaintiff's psychological or emotional wellbeing at the time of Plaintiff met with Dr. Margarida for the neuropsychological evaluation.[6] Under these circumstances, the existence of a protective order has probative value regarding the completeness of Dr. Margarida's evaluation of Plaintiff. The extent of the completeness of her evaluation is for the jury to weigh.

---

[5] The full briefing by the parties regarding Dr. Margarida is contained in Defendant's motions *in limine* to exclude the testimony of Dr. Margarida (ECF Nos. 204, 205) and Plaintiff's response to Defendant's motions *in limine*. ECF No. 211.

[6] Any protective order granted after Plaintiff's evaluation or if Plaintiff only became aware of the order after his evaluation by Dr. Margarida, any mention of the protective order on cross examination of Dr. Margarida is irrelevant.

The risk for undue prejudice to Plaintiff can be minimized in this case if Defendant is permitted only to ask whether Dr. Margarida had been informed of any protective order issued against Plaintiff. Defendant will not be permitted to ask about the details or enter into the reasons for the issuance of the protective order, insofar as those details could lead to the divulging of information which could cause undue prejudice such as allegations of violence or abuse on the part of Plaintiff, and particularly if the protective order was obtained as a result of allegations involving Plaintiff's behavior with his minor stepdaughter.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion in *limine* "To Exclude the Testimony of Juliette Irizarry" (ECF No. 194) is GRANTED IN PART and DENIED IN PART. Ms. Irizarry may testify at trial regarding statements made by Plaintiff to her in the presence of third parties and as to her observations of Plaintiff's conduct or acts during their marriage which did not involve a communicative gesture. However, Ms. Irizarry is precluded from testifying about any utterances, expressions, acts, or gestures by which Plaintiff or Ms. Irizarry conveyed a message to one another in confidence during their marriage or were made by third parties to Plaintiff.

Additionally, Plaintiff's motion in *limine* "To Exclude Any Mention or Reference of Criminal Investigations Initiated By Juliette Irizarry" (ECF No. 200) is GRANTED. Plaintiff's motion in *limine* "To Exclude Any Mention or Reference to Filings for Protective Orders from Juliette Irizarry" (ECF No. 201) is GRANTED IN PART and DENIED IN PART. Defendant may refer to the existence of a protective order obtained by Ms. Irizarry against Plaintiff, if the protective order was in effect and if Plaintiff was aware of the order at the time of his evaluation by Dr. Margarida, for the sole and limited purpose of cross-examining Plaintiff's expert witness

Dr. Margarida, in accordance with the restrictions on that questioning announced in this opinion and order.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 19th day of July, 2022.

s/Marcos E. López<br>
U.S. Magistrate Judge